IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARK WELCHER,** | * |
| Plaintiff, | * |
| v. | * |
| | *   Case No.: DLB-20-1360 |
| **CORIZON HEALTH, INC.,** *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

In this medical malpractice action, Mark Welcher, an inmate at North Branch Correctional Institute ("NBCI"), alleges he injured his finger playing basketball on January 12, 2015 and the medical providers responsible for his care failed to provide the required care. After the injury, a rod was installed in his finger, and surgeons recommended that he receive physical therapy and then have the rod surgically removed, but neither happened. Mr. Welcher filed suit against Wexford Health Sources, Inc. ("Wexford"), the medical provider at NBCI from the time of his injury until January 2019, and Corizon Health, Inc. ("Corizon"), which replaced Wexford as the medical provider in January 2019. Compl., ECF 1. He claims that both providers were negligent in their failure to provide medical care.

Pending is Corizon's motion to dismiss. ECF 9. The parties fully briefed the motion. ECF 9-1, 25 & 36. A hearing is not necessary. *See* Loc. R. 105.6. Because plaintiff failed to file a certificate of qualified expert that both identified Corizon health care providers who breached the standard of care and attested that Corizon's departure from the standard of care proximately caused Mr. Welcher's injury, the motion will be granted.

I.      **Background**[1]

On January 12, 2015, Mark Welcher fractured the metacarpal bone and injured the flexor tendon in his third finger on his left hand while playing basketball at NBCI.  Compl. ¶¶ 1–3 & 15.  On January 23, 2015, a plate was surgically installed in Mr. Welcher's finger at Bon Secours Hospital to help the fracture heal.  *Id.* ¶ 16.  Orthopedic surgeons at the University of Maryland evaluated Mr. Welcher and developed a treatment plan that included surgery to install a hunter rod in his finger, followed by physical therapy two to three times per week for four to six weeks, and then a follow-up surgery to remove the rod after ninety days.  *Id.* ¶¶ 4 & 19–20.

On June 16, 2016, Mr. Welcher provided his prescription for hand therapy to Wexford, the medical provider at NBCI at the time.  *Id.* ¶ 21.  On July 4, 2016, he met with Robustiano Barrera, MD and Amy Booth, RN and provided them with documentation for physical therapy.  *Id.* ¶ 22.  On July 15, 2016, he met with Mahboob Ashraf, MD to discuss physical therapy.  *Id.* ¶ 24.

On September 23, 2016, the hunter rod was surgically installed in Mr. Welch's finger at the University of Maryland.  *Id.* ¶¶ 5 & 26.  On October 17, 2016, his treating surgeon at the University of Maryland, Raymond Pensy, MD wrote to Wexford regarding his need for physical therapy and follow-up surgery.  *Id.* ¶ 27.  On January 23, 2017, a physical therapy and rehabilitation clinic evaluated him and recommended "occupational therapy services to maximize his left-hand function."  *Id.* ¶ 28

After the initial surgery on his hand, Mr. Welcher repeatedly communicated his need for physical therapy and follow-up surgery to Wexford and its agents.  On January 2 and 11, 2017,

---

[1] For purposes of resolving Corizon's motion to dismiss, the Court "accept[s] as true all of the factual allegations contained in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).

2

February 26, 2017, April 1, 2017, August 22, 2017, and November 23, 2017, he submitted sick-call slips requesting treatment for his hand. *Id.* ¶¶ 30, 32, 33, 38 & 40.  On February 1, 2017, April 6, 2017, May 19, 2017, August 25, 2017, November 28, 2017, January 17, 2018, and March 15, 2018, he met with nurses at NBCI and told them that he needed physical therapy and/or follow-up surgery for his hand. *Id.* ¶¶ 31, 34–36, 39 & 41–43.  He also provided the University of Maryland orders for physical therapy and follow-up surgery to Jami Wratchford, RN at the Western Correctional Facility Infirmary, where he was processed on June 27, 2017.  *Id.*  ¶ 37.

      Finally, Mr. Welcher was scheduled for surgery on April 6, 2018, but the surgery could not be performed because his white blood cell count was too low.  *Id.* ¶ 44.  On July 28, 2018, he requested treatment for his pain and numbness.  *Id.* ¶ 45.  On August 1, 2018, he asked a nurse at NBCI to reschedule his surgery.  *Id.* ¶ 46.  On August 13 and 20, 2018, he made the same request of a nurse at Western Correctional Institution.  *Id.* ¶ 47.  He also asked William Beeman, RN to reschedule his surgery.  *Id.* ¶ 48.  Mr. Welcher does not state the date of his request to Beeman; nor does he specify whether Beeman worked for Wexford or Corizon at the time.  *See id.* ¶¶ 14 & 48.

      In January 2019, Corizon replaced Wexford as the medical provider at NBCI.  *Id.* ¶¶ 12 & 49.

      Mr. Welcher never received physical therapy or the follow-up surgery to remove the rod.  *Id.* ¶¶ 6, 23, 25, 31, 34, 36, 37, 39 & 50.  He now has "regular periods of severe pain punctuated by intermittent numbness, limited range of motion and only has partial function of the hand."  *Id.* ¶ 7.

      On October 11, 2019, Mr. Welcher filed a claim with the Director of the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO") naming both Wexford and Corizon as

3

defendants.  He also filed certificates of qualified experts from Lawrence Mendel, DO, FACCP, CCHP and Steven Miller, MD.  ECF 25-2 & 25-3.  The claim was waived out of the HCADRO.

On June 2, 2020, Mr. Welcher filed suit against Wexford and Corizon in this Court.  With regard to Corizon, he claims:

> Despite repeated requests for treatment, the documented need for treatment in Mr. Welcher's prison medical record, and notice by way of this lawsuit being filed in HCADRO, Defendant Corizon has breached its duty to provide Mr. Welcher with adequate and appropriate medical care, neither providing him with hand therapy or the second surgery to remove the hunter rod.
>
> Despite frequent notice and requests for medical care, Defendants have denied Mr. Welcher hand therapy and a second surgery to remove the hunter rod.

Compl. ¶¶ 50–51.  He claims that "Defendants' conduct is continuous and ongoing."  *Id.* ¶ 57.  Wexford filed an answer, ECF 6, and Corizon filed the pending motion to dismiss.

**II.     Standard of Review**

Corizon filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Def.'s Mem. 1.  A Rule 12(b)(6) motion challenges "the legal sufficiency of a complaint" on the grounds that, "even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'"  *Thomas-Lawson v. Koons Ford of Balt., Inc.*, No. SAG-19-3031, 2020 WL 1675990, at *2 (D. Md. Apr. 6, 2020) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017)); *see* Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the "complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  Stated differently, "a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Cooke v. Caliber Home Loans, Inc.*, No. PWG-18-3701, 2020 WL 1434105, at *3 (D. Md. Mar. 24, 2020) (quoting Fed. R. Civ. P. 8(a)(2)).


### III.     Discussion

#### A.     Condition Precedent

In Maryland, there is a condition precedent to filing a medical malpractice lawsuit in court.[2] *Carroll v. Konits*, 929 A.2d 19, 39 (Md. 2007). To initiate litigation against a health care provider, a patient first must file a claim with the Director of the HCADRO and, within ninety days, also file a certificate of a qualified expert, unless the only issue before the HCADRO is lack of informed consent. Md. Code. Ann., Cts. & Jud. Proc. § 3-2A-04(B)(1)(i); *Carroll*, 929 A.2d at 33, 39.[3] In the certificate, the expert must identify a "departure from standards of care" and declare that "the departure from standards of care is the proximate cause of the alleged injury." *See* Cts. & Jud. Proc. § 3-2A-04(B)(1)(i). The certificate also must "mention explicitly the name of the licensed professional who allegedly breached the standard of care." *Carroll*, 929 A.2d at 36; *see Retina Grp. of Wash., P.C. v. Crosetto*, 183 A.3d 873, 883 (Md. Ct. Spec. App. 2018). That is, the certificate must "attest[] that *the defendant's* conduct constituted a departure from the standard of care and that the departure was the proximate cause of the alleged injury." *Carroll*, 929 A.2d at 36–37 (quoting *Witte v. Azarian*, 801 A.2d 160, 162 (Md. 2002)) (emphasis in *Carroll*).

The statute provides that "a claim or action . . . shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert" as described above. Cts. & Jud. Proc. § 3-2A-04(b)(1)(i). Although "the statute does not take away the subject matter jurisdiction of a circuit court to hear and render judgments in [medical malpractice] cases . . . , 'the [Maryland] General [Assembly] has forcefully expressed in § 3–2A–04(a) . . . its intent that this condition precedent be satisfied.'" *Lewis v. Waletzky*, 576 F. Supp. 2d 732, 738 (D. Md. 2008) (quoting

---

[2] The parties agree that Maryland law applies. *See* Def.'s Mem. 4; Pl.'s Opp'n 10.

[3] The ninety-day period is subject to extension for an additional ninety days. Cts. & Jud. Proc. § 3-2A-04(B)(1)(ii).

5

*Oxtoby v. McGowan,* 447 A.2d 860, 864–65 (Md. 1982)), *aff'd*, 475 F. App'x 906 (4th Cir. 2012). The Maryland Court of Appeals "will, *sua sponte, . . .* order an action dismissed where the litigants have not followed the special statutory procedure." *Oxtoby*, 447 A.2d at 865.

### B.  Welcher's Certificates of Qualified Experts

Mr. Welcher filed two certificates of qualified experts with the HCADRO, one from Lawrence Mendel, D.O., FACCP, CCHP and one from Steven Miller, M.D. Corizon contends that neither meets the statutory requirements to state a claim against it. Def.'s Mem. 6–7.[4] As to Dr. Mendel's certificate, Corizon argues Dr. Mendel "did not mention Corizon" and did not discuss Mr. Welcher's treatment on or after January 1, 2019, when Corizon took over as the institution's medical provider. *Id.* at 7. As to Dr. Miller's certificate, Corizon acknowledges he mentioned Corizon but argues he did not "explain how or which employees of Corizon deviated from the standard of care" or "render an opinion as to Plaintiff's care or treatment from January 1, 2019." *Id.* at 6–7.

Dr. Mendel's certificate and accompanying report only addressed Wexford's provision of care. They did not mention Corizon at all. *See* Mendel Certif. & Rept., ECF 25-2. Mr. Welcher argues that the certificate did not need "to 'mention explicitly the name of the licensed professional who allegedly breached the standard of care'" because "Corizon, despite having a duty to render care to Plaintiff as the provider of Plaintiff's medical care, *failed to provide any treatment at all.*"

---

[4] Plaintiff argues that the Court should not consider Corizon's argument because Corizon "filed a nearly identical motion to dismiss" with the HCADRO, which the parties fully briefed and the HCADRO denied. Pl.'s Opp'n 8–9. He contends that the HCADRO "reject[ed] Defendant Corizon's allegation that Plaintiff had failed to state a claim for medical malpractice against Defendant Corizon, premised on Defendant Corizon's failure to render any care at all to Plaintiff." *Id.* at 9. Corizon counters that "no written opinion was issued" and "it is unclear why Plaintiff presumes that HCADRO made such a finding." Def.'s Reply 2. Plaintiff has not provided the Court with the HCADRO's analysis. Nor has he shown that the HCADRO's decision is binding on this Court. Therefore, I will consider Corizon's argument.

Pl.'s Opp'n 23–24 (quoting Def.'s Mem.) (emphasis in Pl.'s Opp'n).  Plaintiff's argument misses the mark.  The deficiency in Dr. Mendel's certificate and report is not that he fails to identify any specific Corizon employee.  The deficiency is that he does not even identify Corizon or reference any care that Corizon rendered or withheld after it replaced Wexford.

Plaintiff argues in the alternative that Dr. Mendel's certificate adequately identified the Corizon healthcare professionals who deviated from the standard of care because Dr. Mendel named two Wexford employees who later became Corizon employees.  Pl.'s Opp'n 26; *see id.* at 22 & n.3.  Specifically, Dr. Mendel declared that

> Wexford Health Sources, Inc., through its agents, servants and employees, including, but not limited to, Krista Swan, RNP, Renato Espina, M.D., Delores Adams, RN, Kimberly Martin, RN, Mahboob Ashraf, M.D., Robert Claycomb, RN, Holly Pierce, CRNP, Katrina Opel, CRNP, failed to conform to accepted standards of care in the treatment of Mr. Welcher's hand injury leading to severe and continued disability of his hand.

*Id.* at 26 (quoting Mendel Certif. 1).  Plaintiff asserts that Holly Pierce and Katrina Opel later worked for Corizon.  *Id.*  Regardless whether some or all of the individuals identified as Wexford's "agents, servants and employees" later became Corizon's employees, Dr. Mendel referred to them as *Wexford's* "agents, servants and employees."  Mendel Certif. 1.  Their actions on behalf of Wexford, when they were employed by Wexford, cannot establish that Corizon later deviated from the standard of care.  Moreover, Dr. Mendel did not discuss Mr. Welcher's care after January 2019, when Corizon replaced Wexford as the medical provider.  Dr. Mendel's statements about Wexford's employees cannot be imputed to Corizon simply because those employees later may have been employed by Corizon.  Consequently, Dr. Mendel's certificate does not meet the statutory requirements.  *See* Cts. & Jud. Proc. § 3-2A-04(B)(1)(i); *Carroll*, 929 A.2d at 36–37.

Dr. Miller's certificate and report, in contrast, did discuss Corizon.  He stated that "[t]he health care providers responsible for the severe deviation from the standard of care were Wexford

7

Health Sources, Inc., and Corizon Health, Inc., through their employees, as identified in [the] accompanying report . . . ." Miller Certif. ¶ 11, ECF 25-3.  Additionally, he observed that Mr. Welcher needed another hand surgery and, "[a]s of November 2018, the second stage tendon repair was pending which is over two years following his original first stage operation." Miller Rept. 4, ECF 25-3, at 7.  He stated that, "[b]ased on [this] time scale, with marked delays in first stage flexor tendon repair (and the second stage is still pending) it is [his] opinion this care falls well below the applicable standard of care for even prison facilities in a similarly situated community." *Id.*  He also noted that, while "Mr. Welcher's hand surgeon, Dr. Pensy, has attempted to encourage and direct the Maryland prison system to facilitate the needed operations and therapy," Wexford and Corizon have not provided this care to Mr. Welcher. *Id.* at 8.  Thus, Dr. Miller's certificate identified the standard of care for providing flexor tendon repair and stated that Corizon breached the standard of care by failing to provide the second surgery to Mr. Welcher.

What Dr. Miller's certificate and report did not do, however, was identify how Corizon's alleged departure from the standard of care caused injury to plaintiff.  Dr. Miller stated generally that he had "encountered severe delay in tendon repair only in developing world countries where no hand surgeon is available" and that "[t]he resulting band function is usually severely compromised." Miller Certif. ¶ 7.  He observed that "[a]s of November 2018, the second stage tendon repair was pending which is over 2 years following his original first stage operation." *Id.*  But he did not state that the delay or failures in this case caused injury to Mr. Welcher.  Indeed, his opinions about causation appear to be limited by the fact that he only reviewed the medical records through November 2018.  Miller Certif. ¶ 6; Miller Rept. 3.  Corizon did not assume responsibility for plaintiff's care until January 2019.  In his opposition, plaintiff discusses the certificates in detail, but he does not argue that Dr. Miller's certificate or his report stated that

Corizon's failure to meet the standard of care was the proximate cause of his injury. *See* Pl.'s Opp'n 7–8, 22–28.[5]

Dr. Miller's certificate also is inadequate because he does not identify with specificity the Corizon healthcare professionals who breached the standard of care. Plaintiff argues that Dr. Miller could not identify the professionals by name because Corizon failed to provide any care whatsoever, as opposed to providing inadequate care. Pl.'s Opp'n 7–8 ("As no agent or employee of Defendant Corizon ever evaluated Plaintiff, discussed Plaintiff's condition with Plaintiff, or rendered any form of treatment to Plaintiff, there is no specific agent or employee of Defendant Corizon for Plaintiff to name—instead, Defendant Corizon's failure is *institution-wide*, covering *each and every licensed professional employed by Defendant Corizon*."). This argument falls short. Maryland law requires that a certificate of qualified expert identify "which physician or physicians breached the standard of care and which physician or physicians were allegedly responsible for [Welcher's] injuries." *Carroll*, 929 A.2d at 37. If "a Certificate does not identify, with some specificity, the person whose actions should be evaluated," then it is "impossible for the opposing party, the HCADRO, and the courts to evaluate whether a physician, or a particular physician out of several, breached the standard of care." *Id.* Plaintiff has not cited, and the Court has not found, any case approving a certificate of qualified expert that does not identify the healthcare providers whose conduct is at issue. Indeed, Welcher's argument that he could not identify any healthcare providers who worked for Corizon in his certificates of qualified expert

---

[5] In contrast, with regard to Wexford, Dr. Mendel's certificate states that Mr. Welcher's "current condition is a direct and proximal result of the negligent actions of Wexford and their employees." Mendel Certif. ¶ 2; *see also* Mendel Rept. 4 ("Health Care Providers, Wexford Health Sources, Inc., through its agents, servants and employees, directly breached their duty of care to Mr. Welcher and . . . their negligent actions were the direct and proximate cause of Mr. Welcher's condition.").

9

conflicts with his identification in his opposition of specific Corizon healthcare professionals who allegedly breached the standard of care. *See* Pl.'s Opp'n 26–27 (noting that "on June 26, 2019, Plaintiff was seen by Katrina Opel [CRNP]," and on January 13, 2019, June 1, 2019, and November 13, 2019, "Plaintiff was seen by Holly Pierce [CRNP]," who also updated his chart on March 14, 2019, but "no treatment was ever provided"). Neither of those individuals—nor any individual who initially received Welcher's records from Wexford but did not request or order treatment—was named as a Corizon employee in the certificates of qualified expert.

Plaintiff argues in the alternative that Dr. Miller specifically identified a Wexford employee who later became a Corizon employee. Pl.'s Opp'n 26. But Dr. Miller only identified the employee in the context of her actions on behalf of Wexford, before she was employed by Corizon. He did not identify her in her capacity as a Corizon employee. Without this identification, Corizon could not determine which of its employees breached the standard of care. *See Carroll*, 929 A.2d at 37.

Plaintiff has failed to satisfy the statutory condition precedent to filing suit against Corizon because he did not file a certificate of qualified expert that both identified the healthcare providers who allegedly breached the standard of care and also attested that Corizon's departure from the standard of care proximately caused his injury. *See Carroll*, 929 A.2d at 36–37; Cts. & Jud. Proc. § 3-2A-04(B)(1)(i). Because plaintiff did not meet the condition precedent, his claim against

Corizon must be dismissed.[6]  *See* Cts. & Jud. Proc. § 3-2A-04(B)(1)(i); *Carroll*, 929 A.2d at 33, 39.  Dismissal is without prejudice.  *See Lewis*, 576 F. Supp. 2d at 738 (noting that, when a plaintiff fails to meet the condition precedent for a health care claim, "dismissal without prejudice is appropriate").

## ORDER

For the reasons stated in this Memorandum Opinion, it is, this 15th day of December, 2020 hereby ORDERED that

1. Corizon's motion to dismiss, ECF 9, IS GRANTED; and

2. Plaintiff's claim against Corizon IS DISMISSED without prejudice.

                                                                                /S/
                                         Deborah L. Boardman
                                         United States Magistrate Judge

---

[6] Because Mr. Welcher failed to meet the statutory requirements, the Court need not address Corizon's argument that he failed to state a claim against it.  The Court notes, however, that Mr. Welcher claims he did not receive sufficient medical care during a period of time in which both Wexford and Corizon had been the medical provider and that he suffered injury from the lack of care.  *See* Compl. ¶¶ 50–57 & 63.  He alleges:

> Despite repeated requests for treatment, the documented need for treatment in Mr. Welcher's prison medical record, and notice by way of this lawsuit being filed in HCADRO, Defendant Corizon has breached its duty to provide Mr. Welcher with adequate and appropriate medical care, neither providing him with hand therapy or the second surgery to remove the hunter rod.
>
> Despite frequent notice and requests for medical care, Defendants have denied Mr. Welcher hand therapy and a second surgery to remove the hunter rod.

*Id.* ¶¶ 50–51.  He also claims "Defendants' conduct is continuous and ongoing." *Id.* ¶ 57.  Thus, he claims Corizon, like its predecessor, continues to deny him the treatment he needs and has caused injury.  *See id.* ¶¶ 55, 57 & 63.  These allegations against Corizon, while far from robust, are sufficient to state a claim for medical malpractice.  *See Haughie v. Wexford Health Sources, Inc.*, No. ELH-18-3963, 2020 WL 5593007, at *19–20 (D. Md. Sept. 17, 2020) (to state a claim for medical malpractice, a plaintiff must allege the applicable standard of care, the defendant's breach of the standard of care, a causal relationship between that breach and the plaintiff's injury, and damages).